UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE JOHNSON #236419,

    Plaintiff,                                      Hon. Janet T. Neff

v.                                                           Case No. 1:19-cv-113

PETER SICES, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

The Court has before it Defendants Peter Sices, M.D. and Barbara Hoover, P.A.'s Motion for Summary Judgment (ECF No. 36) and Defendants Amanda Fogarty, Mark Karnitz, and Unknown Sergeant Baker's (MDOC Defendants) Motion for Summary Judgment. (ECF No. 51.) Plaintiff has responded to both motions. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that both motions be **GRANTED**.

### Background

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), sued Defendants, Peter Sices, M.D.; Amanda Fogarty, R.N.; Mark Karnitz, R.N.; Barbara Hoover, P.A.; and Unknown Sergeant Baker, pursuant to 42 U.S.C. § 1983 alleging that they violated his rights under the Eighth Amendment in October and November 2017 when they were deliberately indifferent to his serious medical need. The events at issue occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Michigan.

On July 20, 2017, Plaintiff transferred to LRF from another MDOC facility. (ECF No. 1 at PageID.10.) At the time of his transfer, Plaintiff had special accommodations for a knee brace

and a ground floor housing assignment with a three-step limit. (ECF No. 38 at PageID.388.) Plaintiff had been issued these special accommodations, in part, because of his history of muscle spasms and pain in his back and legs. (ECF No. 1 at PageID.9–10.) Richard Worel, M.D., evaluated Plaintiff at intake. Because no bunks were available in the elevator unit, Dr. Worel told Plaintiff that he had the option of housing with seven steps or temporary housing in segregation. Plaintiff declined the seven-step option. (ECF No. 38 at PageID.38 at PageID.396.)

On September 29, 2017, non-defendant Jill Britton, R.N., noted in Plaintiff's chart that a provider visit had been scheduled to evaluate Plaintiff's special accommodation for ground floor housing and no more than three steps due to a change to Medical Service Advisory Committee (MSAC) guidelines that permitted a ground floor/no stairs accommodation only if the inmate was incapable of using stairs. (ECF No. 36-4 at pageID.369; ECF No. 38 at PageID.401.)

On October 29, 2017, Dr. Sices assessed Plaintiff regarding his three-step accommodation. Dr. Sices noted that MDOC policy had changed and that "MSAC guidelines only provide for accommodation: 'Ground floor, no stairs,' and only if inmate is incapable of using stairs." (ECF No. 38 at PageID.403.) Plaintiff told Dr. Sices that he had been on a limited stairs accommodation since 2009 when his back gave out and he fell down the stairs. Dr. Sices reviewed Plaintiff's medical file, which contained a previous x-ray of the lumbar spine that was "normal" and a provider's office note from 2014 indicating that an "old lumbar spine MRI" showed "minimal degenerative changes . . . unrelated to any pain complaint." The file also "documented normal lower extremity strength and normal neurologic examination." (*Id.*) After considering the information in Plaintiff's file and MSAC guidelines, Dr. Sices removed Plaintiff's stair accommodation because there was no medical necessity for ground floor housing. Dr. Sices advised Plaintiff to use a railing for support when he used the stairs. (*Id.* at PageID.404.)

On November 7, 2017, non-defendant Amy Roesler, R.N. saw Plaintiff for back pain and advised him to use warm compresses and stretches to relieve his pain and muscle spasms. (*Id.* at PageID.411.) On November 14, 2017, Plaintiff spoke to Defendant Fogarty complaining of back pain. Plaintiff told her that he had chronic back pain, and his pain was flaring "up real bad" that day. Fogarty reminded Plaintiff about ways to alleviate his pain and told him that he needed to put in a kite if he wanted Health Care to evaluate him. Plaintiff said that his pain was an emergency, but Fogarty explained that it was not an emergency because it did not involve loss of life or limb. (*Id.* at PageID.415.)

On November 23, 2017, while walking up the stairs in his unit to go to breakfast, Plaintiff experienced a sharp pain in his lower back and fell forward. (ECF No. 63-1 at PageID.643.) Several inmates notified housing staff that Plaintiff needed medical care. A housing officer called Health Care to report Plaintiff's need for medical attention. Defendant Karnitz told the housing officer to have Plaintiff wait in his unit until he was called out. (ECF No. 38 at PageID.416.) Because of the pain, Plaintiff decided he could not wait and had inmate Anderson push him to Health Care in a borrowed wheelchair. (*Id.*) Plaintiff arrived at Health Care at around 6:27 a.m. Defendant Fogarty was at the medication window and told inmate Anderson that staff were aware of Plaintiff's condition and that Plaintiff had been instructed to wait in his unit until called to Health Care. Fogarty told inmate Anderson to push Plaintiff out of the way until a nurse was free to examine him. (*Id.*) Inmate Anderson left and returned a short time later to retrieve the wheelchair. Anderson and another inmate moved Plaintiff from the chair to the lobby floor. (*Id.* at PageID.644.)

Around 7:25 a.m., Defendant Karnitz and Sergeant Baker approached Plaintiff in the lobby with a wheelchair. Plaintiff complained to Karnitz about loss of feeling from his shoulders to his

feet. (*Id.*) Karnitz then conducted an arm-drop test and observed that Plaintiff was able to stop his arm before it hit the ground. (ECF No. 38 at PageID.421; ECF No. 52-2 at PageID.591.) Karnitz also conducted a pinch test to determine whether Plaintiff had an involuntary response. During the assessment Plaintiff stated, "I didn't even feel you pinch me," but Plaintiff was only asked whether he could "feel this" and was not told it was a pinch. (ECF No. 38 at PageID.421; ECF No. 63-1 at PageID.644.) After Karnitz determined that Plaintiff could be safely moved, he asked Plaintiff to move to the examination room, but Plaintiff refused, saying he could not do so. Accordingly, Karnitz and Sergeant Baker lifted Plaintiff from the floor and placed him into a wheelchair. (ECF No. 38 at PageID.421; ECF No. 52-2 at PageID.591.)

After moving Plaintiff to an exam room, Karnitz finished examining Plaintiff. (ECF No. 52-2 at PageID.592.) Karnitz noted that Plaintiff had some bulging and muscle spasms in his lower back. (ECF No. 63-1 at PageID.645.) Karnitz notified Defendant Hoover of Plaintiff's complaints and Karnitz's findings and Hoover ordered Flexeril and a Toradol injection to address Plaintiff's back spasms and pain. (ECF No. 36-5 at Page ID.372; ECF No. 52-2 at PageID.592.)

**Motion Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004), the

5

plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005).

**I.    Defendants Sices and Hoover's Motion**

**A.    Hoover**

Defendant Hoover's involvement in Plaintiff's medical care, as pertinent to Plaintiff's claims in this case, was limited to prescribing Flexeril and Toradol for Plaintiff's back pain on November 23, 2017. In his response, Plaintiff states that Hoover provided appropriate medical care based upon the information she received about Plaintiff's condition, and he requests to voluntarily dismiss his claims against Hoover.

Even if Plaintiff had not requested voluntary dismissal, Defendant Hoover is entitled to summary judgment, as there is no evidence in the record that she was deliberately indifferent to Plaintiff's medical need and pain.

6

**B.     Sices**

Plaintiff alleges that Defendant Sices was deliberately indifferent to Plaintiff's serious medical need when he discontinued Plaintiff's three-step limit special accommodation on October 29, 2017, based on the change in MDOC policy and MSAC guidelines. "A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome is insufficient or even harmful." *Rhinehart*, 894 F.3d at 738 (citing *Farmer*, 511 U.S. at 844). So long as a doctor does not knowingly expose a prisoner to an excessive risk of serious harm and exercises reasonable medical judgment, the Sixth Circuit will defer to the doctor's judgment. *Id.* "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Moreover, where the plaintiff's claim amounts to disagreement with the medical provider's judgment or approach to medical treatment, the claim against the defendant-provider fails. *See White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004).

Here, Dr. Sices assessed Plaintiff's need for a special accommodation under the new MSAC guidelines, which no longer provided an option for a three-step limit. The new MSAC guideline provided a ground floor, no stairs accommodation only if the prisoner was incapable of using the stairs. Dr. Sices reviewed Plaintiff's medical file, including a previous x-ray of Plaintiff's lumbar spine, a provider's note indicating that an old MRI showed minimal degenerative changes, and findings of normal lower extremity strength and neurologic examination and determined that Plaintiff was not incapable of using the stairs. Nothing in Dr. Sices's assessment suggests that he exposed Plaintiff to an excessive risk of serious harm.

Plaintiff disputes Dr. Sices's assertion that MDOC Policy and MSAC guideline had changed. In support of his assertion, Plaintiff attaches MDOC Policy Directive 04.06.160 (June

7

30, 2008) to his response, which remains in effect. (ECF No. 40 at PageID.509; ECF No. 40-1 at PageID.527—29.) Plaintiff's reliance on this Policy Directive as evidence that MSAC guidelines had not changed is misplaced. Policy Directive 04.06.160 is not the MSAC guideline. Thus, Plaintiff fails to rebut Dr. Sices's showing that his assessment of Plaintiff's need for a special accommodation under the new guideline was both proper and supported by reasonable medical judgment. Plaintiff also intimates that Dr. Sices's assessment was somehow influenced by Plaintiff's housing unit officers, who sought to punish Plaintiff for being argumentative. Plaintiff offers nothing more than speculation to support this assertion, and even if the housing officers had requested that Plaintiff be assessed to determine whether he still required a special accommodation, Plaintiff fails to show that Dr. Sices's assessment and conclusion were devoid of independent medical judgment. Finally, Plaintiff argues that, because Corey Grahn, N.P., gave Plaintiff a special accommodation for ground floor, no steps housing when Plaintiff transferred to the Michigan Reformatory in March 2018, that is evidence that Dr. Sices was deliberately indifferent to Plaintiff's serious medical need. (ECF No. 43 at PageID.538.) At that point, however, Plaintiff had a history "of recent falls on stairs" (ECF No. 38 at PageID.480), which was not the case when Dr. Sices assessed Plaintiff on October 29, 2017. In sum, at most, Plaintiff has demonstrated a difference of medical opinion or perhaps negligence, which does not amount to deliberate indifference. *Westlake*, 537 F.2d at 860 n.5.

## II.     MDOC Defendants' Motion

Defendants argue that Plaintiff's degenerative changes in his lower back did not constitute a serious medical need for purposes of the objective prong of Plaintiff's claim because no doctor had mandated treatment beyond medication, application of heat, and stretching to treat Plaintiff's

occasional back pain. Defendants cite no case holding that back pain is not a serious medical condition, but some courts have so held. *See Billizone v. Jefferson Parish Corr. Ctr.*, No. 14-1263-SS, 2014 WL 7139636, at *3 (E.D. La. Dec. 15, 2014) (concluding that the plaintiff's back pain caused by disc erosion in his lower back did not rise to the level of a serious medical need); *Veloz v. New York*, 339 F. Supp. 2d 505, 522–26 (S.D.N.Y. 2004) (concluding that the plaintiff's back pain and mild to moderate degenerative arthritis of the spinal vertebrae did not constitute a serious medical condition). On the other hand, the Sixth Circuit has recognized that "extreme pain due to [a] back condition" can constitute "an objectively serious medical condition." *Murphy v. Grenier*, 406 F. App'x 972, 975 (6th Cir. 2011); *see also Crowell v. Abdellatif*, No. 15-13825, 2017 WL 1186388, at *4 (E.D. Mich. Mar. 2017) ("Plaintiff meets the objective prong of a deliberate indifference claim in that he has the sufficiently serious medical condition[] of . . . back pain . . . ."). Accordingly, the Court concludes that Plaintiff has presented sufficient evidence to satisfy the objective prong of his claim.

### A. November 14, 2017

Plaintiff alleges that Defendant Fogarty denied him medical care on November 14, 2017. That day, Fogarty responded to Plaintiff's kite for immediate medical care for his back pain. Defendant Fogarty instructed Plaintiff on ways to relieve the pain, including using a warm, moist compress, stretching, and taking his prescribed medications. Fogarty also told Plaintiff to put in a kite if he wanted to be evaluated. (ECF No. 38 at PageID.415.) The evidence shows that Defendant Fogarty provided Plaintiff constitutionally-adequate medical care for his pain. Moreover, there is no basis to conclude that Fogarty ignored Plaintiff's serious medical needs or disregarded a substantial risk to Plaintiff's health. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

### B.     November 23, 2017

Plaintiff claims that Defendants Fogarty and Karnitz were deliberately indifferent to his serious medical needs on November 23, 2017.  There is no dispute that Plaintiff received medical care for his back pain that day.  His contention is that Defendants Fogarty and Karnitz were deliberately indifferent by not treating him for over an hour after he arrived at Health Care as he lay on the floor in pain.  To establish an Eighth Amendment violation based on an alleged delay in treatment, the prisoner must place verifying medical evidence in the record establishing the detrimental effect of the delay.  *Napier*, 238 F.3d at 742.  Plaintiff has not met this requirement. In fact, Plaintiff has not alleged any actual detriment resulting from a one-hour delay in treatment.

Plaintiff also fails to present any evidence to establish the subjective prong of his claim. Plaintiff has presented no evidence from which a reasonable jury could conclude that Fogarty and Karnitz perceived and disregarded a substantial risk to Plaintiff's health.  When Plaintiff arrived at Health Care, Fogarty and Karnitz were busy attending to other prisoners.  (ECF No. 52-2 at PageID.591; ECF No. 55 at PageID.600.)  Defendant Karnitz attended to Plaintiff when he was finished administering insulin to waiting prisoners.  (ECFR No. 52-2 at PaeID.591.)  Plaintiff has not shown that his back pain in this instance presented a more serious condition than his pain in prior instances.  In sum, Plaintiff has not shown that the treatment he received on November 23, 2017 was "so woefully inadequate as to amount to no treatment at all."  *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake*, 537 F.2d at 860 n.5).

Finally, Sergeant Baker's only involvement with Plaintiff's medical care on November 23, 2017, was assisting Defendant Karnitz in lifting Plaintiff from the floor to the wheelchair. Plaintiff does not allege that Sergeant Baker impeded Plaintiff's access to medical care or interfered with it in any manner. Plaintiff fails to support a viable Eighth Amendment claim against Sergeant Baker.

### C.      Qualified Immunity

The MDOC Defendants also argue that they are entitled to qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236. Because Plaintiff has failed to establish that a constitutional violation occurred, I further recommend that the MDOC Defendants are entitled to qualified immunity.

### Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants Sices and Hoover's Motion for Summary Judgment (ECF No. 36), **grant** Defendants Fogarty, Karnitz, and

11

Unknown Baker's Motion for Summary Judgment (ECF No. 51), and dismiss Plaintiff's complaint with prejudice.

I further recommend that an appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: February 27, 2020  /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge